# Richmond.

## MORRISS v. VIRGINIA INSURANCE COMPANY.

### December 13th, 1888.

1. JURISDICTION—*Hustings court—Chancery court—Case at bar.*—Code 1873, ch. 167, § 53, provides that any chancery cause may, *by consent*, be submitted to the judge of the court wherein pending for determination in vacation. Act of July 11th, 1870 (Acts 1869-70, p. 427), authorizes, in certain events, the judge of the hustings court of the city of Richmond to perform any duty required by law of the judge of the chancery court. Where such cause pending in the chancery court of said city was, by consent (the infant defendants being represented by *guardian ad litem*), submitted July 8th, 1873, to the judge thereof for decree in vacation, and a decree *beneficial to said infants* was entered in vacation by the judge of the said hustings court, acting as judge of said chancery court;

HELD:

 The judge of the hustings court, sitting as judge of said chancery court, was *the judge of the latter court*, and the decree valid.

2. JUDGE DE FACTO.—There can be no judge *de facto* in any case where there is an incumbent in the office.

3. CONSTITUTION—*Act July 11th, 1870.*—Art. X, § 15, Virginia Constitution, providing that no "law shall embrace more than one subject, which shall be expressed in its title," is not violated by the act of July 11th, 1870, entitled "an act to enlarge the jurisdiction of the hustings court," etc.

4. INFANTS—*Guardian ad litem—Consent decree—Bill of Review.*—Although infant defendant may file, after becoming of age, his bill to review and reverse a decree that was entered in a suit to which he was a party, and defended by guardian *ad litem*, beneficial to his interest as shown by the record, by consent of all the parties thereto, it will not be set aside.

Appeal from decree of chancery court of the city of Richmond,

rendered August 5th, 1886, in a chancery cause therein pending, wherein Charles Y. Morriss, trustee, etc., was complainant, and Robert F. Morriss, Charles Y. Morriss, Chapman W. Morriss, and Robert F. Morriss, Jr. (the last three being infants), were defendants. A final decree was entered in said cause July 25th, 1873. After his arrival at age, October 13th, 1883, said Chapman W. Morriss was allowed to file his bill to review and reverse the said decree, but the court dismissed his bill at the hearing, and he appealed. Opinion states the case.

*Staples & Munford*, for appellants.

*Guy & Gilliam*, for appellees.

LACY, J., delivered the opinion of the court.

The case is as follows: On the 25th day of February, 1873, one Charles Y. Morriss, as trustee, filed his bill in the said court, seeking the sale of certain lands held by him as trustee under the deed of one Robert F. Morriss and Emma, his wife, conveying the said real estate to him, the said Charles Y. Morriss, in trust, dated March 15, 1870. The deed was a settlement by the said Robert F. Morriss of the said real estate for the benefit of his wife and children, *subject to his existing liabilities*, and conveyed a tract of land in Henrico county, in the vicinity of the city of Richmond, containing eight hundred and forty-nine acres, and the personal property thereon, and a lot in the city of Richmond and the improvements thereon, situated at the southeast corner of Main and Tenth streets in the said city, and other real estate in Buckingham county, upon trust that the said trustee should hold the said property "for the separate use, benefit, advantage, and support of the said Emma Morriss and all her children by the said grantor, Robert F. Morriss, and allow her, the said Emma Morriss, during her life to receive the profits or have the use thereof, and for the benefit after her death of the

children she might have by her said husband, Robert F. Morriss, to be used for the use, maintenance and support of the said children until the death of the said Robert F. Morriss, and then to be divided among the children; and upon the further trust that if at any time hereafter it be the wish of the said Emma Morriss to sell or dispose of the said property, or any part or parcel thereof, and reinvest the same, and she should so signify to the said trustee in writing, attested by three witnesses, then the trustee to sell and reinvest in other property, to be held under the said deed as the property conveyed and sold had been held. The trustee was authorized, upon like request of Mrs. Morriss, to borrow money and continue the liens already existing upon the real estate conveyed, or to create other liens. And if either parcel of land should be sold to satisfy the lien thereon, then, at the like request of Mrs. Morriss, if any surplus remained after satisfying the lien for which it was sold, "*the said surplus should be applied to the satisfaction of the lien on the other piece as far as it would go, and to that extent to relieve the said property,*" and, if not so applied, then to be reinvested by the trustee. The bill of the trustee set forth the deed in trust stated above. That at the time of the said conveyance there was a lien on the above-mentioned lot on Main street to secure a debt due one George S. Brown, of Baltimore. This lien was secured by deed in trust, and the rent dedicated to the payment of the interest on the Brown debt, and the residue of the rents to be paid to Robert F. Morriss. The bill set forth that the rents were not sufficient to keep down the interest on the debt, and filed the deed, with a statement of the rents and the interest. That an advantageous offer had been made for the property, which it would be to the interest of the infants to accept, but that Mrs. Morriss was dead, and her request could not be obtained; that the arrears of interest were increasing the debt, and that by a sale at the offer made there would be a surplus after paying the Brown debt. That the trustee had made a sale, subject to the approval of the court, at $45,000, and the

purchaser had assumed the Brown debt, and, upon approval by the court, would pay the residue of the purchase-money in cash. Robert F. Morriss and the children, by guardian *ad litem,* were made parties defendant, and a sale as aforesaid prayed for. This was ordered accordingly, and the surplus, which was ascertained to be $14,000, was put in bank to the credit of the cause, and a deed was directed to be made to the purchaser, one E. T. Baird. This decree was rendered upon the depositions of witnesses and the report of a master commissioner.

On the 17th day of June following the said Charles Y. Morriss, trustee, filed his petition in the cause, setting forth that the tract of land in Henrico county, conveyed in the deed in trust and mentioned above, was under a lien by trust deed for $16,000, created by the said Robert F. Morriss before the execution of the settlement on his wife and children; that it was now due and that Robert F. Morriss could not pay it, and had no other property, and that the tract of land was about to be sold, and the sale would be attended with a ruinous sacrifice. That the farm was yielding a good income for the support of the children; that it was likely to increase in value, and that the surplus arising from the sale of the Main street lot was as much bound for the debt secured on the farm in Henrico as the farm was, the said debt having existed at the time of and before the execution of the deed of settlement, and that this surplus, in the hands of the court, should be applied to the debt on the farm held by the appellee company; and that the children had some property from another source, which would enable them to pay off the entire debt remaining unpaid. Upon the depositions of witnesses and the report of a master commissioner, the prayer of this petition was granted, and the surplus arising from the sales of the Main street property was applied to the debt of the appellee company secured on the Henrico farm, which surplus, after deducting the accrued interest on the Brown debt, was ascertained to be $10,702.78.

On the 13th day of October, 1883, Chapman W. Morriss, one

of the children of Robert F. Morriss and Emma his wife, having arrived at full age, filed his bill of review, seeking to set aside the foregoing decrees in the cause; that they were null and void, not having been entered by a competent judge, the same having been done by the judge of the hustings court of Richmond, sitting without authority in the chancery court, and having been rendered in vacation upon a consent order, whereas he was an infant and incapable of consenting, and because the application of the surplus arising from the sale of the Main-street lot to the debt of the appellee company secured on the farm in Henrico county was violative of the terms of the deed of settlement aforesaid. The chancery court of Richmond city allowed this bill to be filed, but, upon consideration, dismissed it at the hearing. Whereupon the said Chapman W. Morriss appealed.

The first error assigned is, that the vacation decree rendered by A. B. Guigon, judge of the hustings court of Richmond, acting as a judge of the chancery court of Richmond, was a nullity and all acts under it void, because there was no authority to be found in the law for a judge to render a decree in vacation, which power is not given by the authority to render such decree in term. Citing *Tyson's Ex'ors* v. *Glaize and others*, 23 Gratt. 800. Section 53, chapter 167, Code of Virginia, 1873, provides: " Chancery causes may hereafter, by consent of parties given in open court and entered of record, be submitted to the judge of the court in which such cause is pending, for decision or decree to be made therein in vacation, and all decrees so made hereafter and entered by the clerk in vacation shall be deemed and taken to be as valid as though they had been made and entered in open court." This act was passed in January, 1873, and the decree herein was rendered in July, 1873. But it is contended that this act only gave such authority to the judge of the court in which the cause is pending, and that the judge of another court sitting in such court could not thus acquire the needed authority. It is provided by the Act of Assembly of July 11, 1870, (Acts of Assembly, 1869–70, p. 427):

"During the absence of the judge of said chancery court, or the inability of the said judge from any cause to hold a term of his court, or to sit in any particular case, or discharge any duty required by law, the said term may be. held, or said cause may be tried, or the said duty may be performed by any circuit judge, or by the *judge of the hustings* court of the city of Richmond."

But the argument is still farther pressed that if the judge of the hustings court was thus authorized to sit as judge under the act of July 11, 1870, that the act of January 14th, 1873, which authorized the judge of that court to render decree in vacation when the parties consented, did not apply to the substituted judge, because the terms of the act did not include him ; that the authority is given to the judge of that court and none other. The answer is that when the judge of the hustings court was by lawful authority sitting as judge of the chancery court, and holding a term of that court, or trying a case therein, *he was the judge of that court.* He became such by authority of the law by which he lawfully ascended that bench, and any law which referred to the judge of that court, and granted any powers, granted such powers to him. Any other construction of the law would be unreasonable. But it is still argued that, grant all this, by the very terms of the said act, he could only render such decree in vacation, when, under the terms of the act of January 14, 1873, *" the consent of parties given in open court and entered of record "* had submitted the cause to *the judge of the court for decree therein in vacation,* and that this appellant, being an infant, could not consent to anything—was incompetent to give the consent required to give jurisdiction. The consent involved here did not involve the jurisdiction of the court ; that was completely vested without such consent. It is true that consent cannot give jurisdiction where the court is without it, but this applies to the original jurisdiction—as consent for the chancery court to try a case of assault and battery ; but in this case the court had complete jurisdiction of the subject-

matter, and the consent involved was only as to a matter of procedure, as, for illustration, the time when or during which the judge might make a deliverance of the matter in hand. Consent, however, was necessary to give validity to the decree, which the statute required to be entered of record. The infants were parties to this suit, and defended the suit by their guardian *ad litem* appointed to represent them, and the record shows that the parties to the record consented. An infant is never to be prejudiced by any act, default, or admission of his guardian *ad litem*, and, as to all matters of substance, it has always been the practice in chancery, in decreeing against an infant, to reserve to him six months after coming of age to show cause against the decree, and at the common law to omit this was error. But the reservation being often omitted, and decrees thus vitiated, in Virginia the statute was passed declaring that infant defendants shall be allowed to show cause against decrees within six months after coming of age, whether leave be reserved in the decree itself or not, and, indeed, dispensing with any such reservation. Under this statute the bill of review is filed by the appellant upon coming of full age, and, this being availed of, he is entitled to show any error to his prejudice and to have the same corrected, and; if he has been prejudiced by the consent decree submitting the cause to the judge of the court for decision or decree in vacation, he is entitled to show this, and in this case more is not necessary to the complete preservation of his rights. The cause to be shown must be such as existed at the time of decree, and not such as may arise afterwards. It was a matter of convenience, and not of substance, that the decree should be rendered in vacation instead of in term. The court met once in three months, and the question involved was of moment. The property of the infant was about to be sacrificed by a sale, and the court controlled money belonging to the infant sufficient to prevent the sale and threatened sacrifice. Delay was likely to work an injury. The statute, if it could be applied to the case of an infant, provided

what appeared to be a remedy. The chancery court construed it liberally, and entered of record the consent of all the parties, although some were infants, and thus advanced the relief and applied the remedy. If this had been to the prejudice of the infant, he can show such prejudice as cause against the decree, but, if to his advantage, no other party can avail of it as error (*Harman* v. *Davis*, 21 Gratt. 461), for, although the infants were incapable of consenting to it, if for their benefit, it will be maintained. If the decree is for their benefit there is no cause which they can show to their prejudice. And in this case, all the parties being before the court, and it appearing to the court that the decree was for the benefit of the infant, it will not be set aside on his motion. It were a vain thing to set aside the decree because the infant had not consented thereto, and re enter the same decree in maintenance of his rights and best interest.

The doctrine of *de facto* officers has no application to this case, and the rights of the parties are not dependent upon any such question. There can be no *de facto* judge in any case where there is an incumbent of the office. But in this case, and so far as this case is concerned, A. B. Guigon, by appointment of the law, was the judge of the chancery court, filling the office as completely as if duly commissioned therein. There is no constitutional objection to the title of the act conferring this authority. The title of the act is "An act to enlarge the jurisdiction of the hustings court," &c. The jurisdiction of the hustings court, before its passage, did not extend to any case in the chancery court; but, by the act, the judge of that court was given an enlarged jurisdiction to try and determine cases in the chancery court under certain circumstances. It would be a strained construction to hold that such granted powers to the judge of the court, enlarging his jurisdiction, were so repugnant to the title referring to an enlargement of the jurisdiction of that court as to render the act void, as repugnant to the 15th section of the 5th article of the Virginia Constitution, which

provides that "no law shall embrace more than one object, which shall be expressed in its title."

Upon consideration of all the questions raised in the case we are of opinion that there is no error in the decree appealed from, and the same will be affirmed.

DECREE AFFIRMED.