WALLACE, RESPONDENT, v. THE HELENA ELECTRIC RAILWAY COMPANY, APPLICANT.

JUDGES — Jurisdiction — Constitutional law — Injunction. — Section 12, article viii. of the Constitution, providing that "any judge of the District Court may hold court for any other district judge," does not, in the absence of constitutional or statutory provision giving district judges concurrent jurisdiction, empower a judge, acting for another, to exercise out of court the judicial power of the judge whose court he is holding, and an order of injunction issued by such judge in chambers is void. (DE WITT, J., dissenting on rehearing.)

In the matter of the application of Frank Langford for a writ of *certiorari* to review the proceedings of the District Court of the First Judicial District, Lewis and Clarke County, whereby he was found guilty of contempt for violation of an order of injunction issued by Hon. T. J. GALBRAITH, presiding judge, who was holding court for Hon. WILLIAM H. HUNT, judge of said district.

*McCutcheon & McIntire*, for Applicant.

If any contempt has been committed in this case it is that provided for by subdivision 5, of section 584, page 210, of the Compiled Statutes. This presupposes the existence of a valid writ, or process. The paper purporting to be an injunction in this case is neither a writ nor an order. It purports to be a

writ, but lacks the essential features of all writs, viz., the attestation by the clerk of the court with the seal of the court. Nor can it be upheld as an order in that it is not signed by the judge of the court whence it purports to emanate.

This court will take judicial notice of the fact that the judge of the First Judicial District is Hon. William H. Hunt. This is also presumed to be known by all persons resident within that district. We submit that when, as in this case, a paper purporting to be signed by the judge of the District Court has not the signature of such judge, but that of another person who is known not to be the judge, that it is not lawful process within the meaning of the above statute. By section 12 of article viii. of the Constitution, it is provided that a judge of the District Court shall be elected in each district; and also "any judge of the District Court may hold court for any other district judge." In view of another provision of the Constitution, article iv., section 29, that the provisions of the Constitution are mandatory and prohibitory, it is, to say the least, extremely doubtful whether any other than strictly *court* work can be done by one district judge for another. *Expressio unius*, etc. It will be noted that no pretense is made in this cause that the alleged injunction was issued while court was in session. We submit further, that the quoted words from article viii., section 12, cannot mean more than that one district judge may act for another, either on request or when the proper judge is absent or otherwise unable to act. The district judges are not judges of the entire State, but only of their respective districts. It cannot be that while traveling around the State they carry with them as an invisible train, the might and power they possess in their respective districts, for if they do, then it would seem that there is nothing to prevent the spectacle of eight judges holding eight District Courts in the same district at the same time. It should be noted that said injunction is signed "T. J. Galbraith, judge of the District Court," and that it omits any reference to the fact that he was presiding over the first district, or that for any reason he had the right to issue it. The invalidity of this process is clearly apparent on its face. (*People* v. *O'Neil*, 47 Cal. 110; *Klaise* v. *State*, 27 Wis. 463; *Owens* v. *State*, 27 Wis. 456; *American*

*Loan & Trust Co.* v. *East & West Ry. Co.* 40 Fed. Rep. 182.) The power of the district judges is not the same as that formerly exercised by the territorial judges. These latter were appointed for the Territory, and not for a particular district, and hence could act anywhere in the Territory. But even under the old practice when one district judge issued a restraining order for another, the reason why he did so was stated in the order; *a fortiori* should this be done under the present system.

*McConnell & Clayberg,* for Respondent.

Did Judge Galbraith have jurisdiction to issue the injunction? Under the Constitution "any judge of a District Court may hold court for any other judge, and shall do so when required by law." (Art. viii. § 12.) The schedule to the Constitution provides that all the laws of the Territory of Montana shall be and remain in full force except where inconsistent with the Constitution. There can be no question but that prior to the adoption of the Constitution, the judge of one District Court could issue injunctions in suits pending in other districts. The statute allowed it and nothing prohibited it. Section 172, Code of Civil Procedure, provides that an injunction may be granted by the court in which the action is pending, or "a judge," not "the judge." This seems to indicate that more than one judge should have the right to act, otherwise the statute would have said "the judge." This is made conclusive by sections 551 and 552, which provide that if a party make application to one judge for a writ, which is denied in whole or in part, he shall be in contempt if he apply to another judge for the same writ, except when the first application was refused because of irregularity. This has been the practice for years in the Territory, and the Constitution does not change it, nor are its provisions inconsistent with the statutes above quoted. Any other doctrine would in many cases be a denial of justice. Injunctions, to be useful, must be promptly issued, and unless the power contended for exists, no injunction could possibly be issued in any district where the judge thereof was disqualified, or out of the State, or where there was a vacancy in the office. The case presented here is even stronger than a case of absence or disqualification of the judge. Judge Galbraith was holding the

District Court in Lewis and Clarke County at the request of Judge Hunt, under the provisions of the Constitution. He was therefore the judge of this district *pro hac vice,* and could exercise all the jurisdiction which was vested in Judge Hunt. It cannot be necessary that the authority should appear upon each order. If so, it must appear with every judicial act by him performed. This would violate the presumption of jurisdiction in a court of record, which always obtains. The following cases bear upon the points above urged: *Bear* v. *Cohen,* 65 N. C. 511; *Clark* v. *Rugg,* 20 Fla. 861; *Eureka, etc. Co.* v. *Superior Court,* 66 Cal. 311; *People* v. *McCauley,* 1 Cal. 379; *Wyers* v. *State,* 21 Tex. App. 448; *In re Angus,* 28 Tex. App. 293; *Empire Land & Canal Co.* v. *Engley,* 14 Colo. 289. We submit that the foregoing cases are conclusive of the proposition that Judge Galbraith had jurisdiction to issue the order.

HARWOOD, J.—It appears from the record, that on the twenty-first day of June, 1890, Franklin R. Wallace, plaintiff, brought an action in the District Court of the First Judicial District against the Helena Electric Railway Company, defendant, to obtain an order of injunction requiring said defendant to desist and refrain from laying a street railway in a certain portion of Main Street in the city of Helena, Lewis and Clarke County. The complaint and undertaking was filed in the office of the clerk of said District Court on said twenty-first day of June; that during said day Hon. Thomas J. Galbraith, judge of the Fifth Judicial District, was the presiding judge, holding court for Hon. William H. Hunt, judge of the First Judicial District, in the trial of an action at the City of Helena in the First District; that at five o'clock in the evening of June 21st, after court had adjourned until the succeeding Monday, application was made to Judge Galbraith in chambers, by plaintiff's counsel, for an order of injunction in said action to restrain defendant from laying said street railway, which application was heard and an order of injunction was thereupon granted by Judge Galbraith. It further appears from the record, that at the time of granting said order of injunction, Hon. William H. Hunt, judge of the first district, was present in the city of Helena, the county seat of Lewis and Clarke County, which

county is the First Judicial District. That on the twenty-third day of June Judge Hunt presided in his court during the morning hour in hearing motions and demurrers, that being motion day, and on the same day Judge Galbraith proceeded with the hearing of the same case which had been on trial in said court before him on the 21st of June, and both said judges signed the minutes of the said court for June 23d. Following the issuance of said order of injunction certain proceedings were had against one Frank Langford, in said First District Court, for the alleged violation of said order, which resulted in the court finding him guilty of contempt, and assessing a fine of five hundred dollars against him as punishment therefor. Whereupon Langford was granted a writ of *certiorari* from this court to bring up said proceedings, whereby he was found guilty of contempt, for review.

The learned counsel, on behalf of the relator Langford, urges several points of objection touching the jurisdiction of the judge who issued said order of injunction. The first, and as we consider the most important objection, being that Judge Galbraith, the judge of the Fifth Judicial District, while holding court in the first district under the constitutional provision that "any judge of the District Court may hold court for any other district judge," had no power to discharge the other duties, and exercise the other functions of the judge of the first district, such as issuing an order of injunction in chambers.

Jurisdiction and judicial power must be conferred by law. The judicial districts of the State, and the organization of the District Courts, as now established, rest wholly upon the provisions of the Constitution. The legislature is given power to make changes in the districts, and to increase or decrease the number of judges in any judicial district, but so far this legislative power has not been exercised.

Section 11 of article viii. of our Constitution defines the jurisdiction of the District Courts, and also provides in the latter part of said section as follows: "Said courts and the judges thereof shall have power also to issue, hear, and determine writs of mandamus, *quo warranto, certiorari*, prohibition, injunction, and other original and remedial writs, and also all writs of habeas corpus on petition by, or on behalf of any person held in actual custody in their respective districts."

Section 12 of article viii. provides as follows: "The State shall be divided into judicial districts, in each of which there shall be elected by the electors thereof one judge of the District Court, whose term of office shall be four years, except that the district judges first elected shall hold their offices only until the general election in the year one thousand eight hundred and ninety-two (1892), and until their successors are elected and qualified. Any judge of the District Court may hold court for any other district judge, and shall do so when required by law."

Section 13 of article viii. defines the limits of each judicial district of the State. It will be observed that the Constitution defines the jurisdiction of the District Courts and of the judges thereof, and provides for one judge in each district to exercise these judicial powers, in holding court and otherwise, as prescribed by the Constitution. The judicial powers of the district judge for each district are committed to one chosen person, with the provision that "any judge of the District Court may hold court for any other district judge." Under that provision it is clear that any district judge may go into another district and hold court for another judge. It is equally clear, also, that without a provision of law authorizing it, a district judge would not have authority to go into another district and exercise his judicial functions. The jurisdiction must be conferred by law.

The learned counsel for respondent contends that under the clause of section 12 of the Constitution above mentioned, the district judge who goes into another district to "hold court for any other district judge," may exercise all the powers of the judge of the latter district. When first announced the proposition seemed tenable, but upon mature consideration of the provisions of the Constitution we are inclined to conclude otherwise. There are many powers by law committed to a district judge to be exercised otherwise and at other times than in holding court; and moreover, these powers are as well defined in law as the powers of the court. The provision of the Constitution is that "any judge of the District Court may hold court for any other district judge." This provision is limited. Is it implied in this clause that the district judge acting for another under it may exercise out of court all the powers of the judge whose court he is holding? It seems to us that there is no

room for such implication. Under this provision of the Constitution any judge of the District Court may be called into another district to hold court for another judge. Such holding of court by the judge going into another district may be for one hour, or one day or more, or for the trial of one cause or more, according to the exigency which prompted the call. The judge of the district may be in his district exercising his official powers in all matters except the special matters committed to the judge called in to hold court. There is at present no provision of law giving to the district judges concurrent jurisdiction in any district. Neither the Constitution nor the legislature has made any provision to that effect. The Constitution has defined the limits of each judicial district, and provided for one judge for each judicial district. When a judge goes out of his district to hold court in another, he holds court "for" another district judge, not concurrently with another district judge, but "for" him.

If, then, there is no provision of law authorizing two judges to exercise their judicial power concurrently in the same district, and as contended by counsel for respondent, Judge Galbraith was empowered, while holding court in the first district, to exercise all the powers of judge of that district, in chambers as well as in holding court, we are confronted with a grave and pertinent question, namely: Was the judicial powers of Judge Hunt suspended while Judge Galbraith was temporarily holding court for him in the first district? We find no provisions of law to warrant us in affirming that proposition. It must follow then, that Judge Galbraith possessed only a special jurisdiction to hold court for the judge of the first district, and was not authorized to exercise his judicial powers in said district, in matters not properly brought before him while holding said court.

This interesting question might be illustrated by a further suggestion. Certain judicial districts in this State comprise three counties. The jurisdiction of the judges of such districts is of course co-extensive with the judicial district. The Constitution provides that terms of court shall be held in each county at stated times. Suppose the judge of a district, comprising three counties, should call in a judge of another district

to hold court for him in one of his counties for the trial of one action, can it be affirmed that this special jurisdiction to preside in the court of one county in the district for a limited purpose conferred a jurisdiction to make an order out of court, in a case pending in another county in said district? It is essential that the judicial powers, whether exercised by the courts or the judges thereof, should repose upon clear provisions of law.

For the reasons herein expressed we hold that the judge issuing said order of injunction exceeded his jurisdiction, and therefore the proceedings set forth by the return of said writ of *certiorari*, whereby said Frank Langford was found guilty of contempt for violating said order of injunction, must be set aside, and that no further proceedings be had thereunder, and it is so ordered.

BLAKE, C. J., and DE WITT, J., concur.

### ON REHEARING.

*McCutcheon & McIntire*, for Applicant.

*McConnell & Clayberg*, for Respondent.

HARWOOD, J. — The application for a writ of *certiorari* in this case was heard and determined at the July term of this court. (See same case, *ante*, p. 24.) Petition for rehearing was filed and granted. The jurisdictional question upon which the case was determined is worthy of the careful and extensive consideration which it has received; and in finally announcing our conclusions, some observations will be made upon the authorities cited, and the reasons urged by plaintiff's counsel for a different construction of the constitutional provision governing the question than that announced in the original determination of the case. The authorities cited in support of plaintiff's position are so far distinguished, and rest upon constitutional or statutory provisions so radically different, and so ample in scope, that such authorities tend strongly to support the conclusions originally announced in this case.

In the case of *Clark* v. *Rugg*, 20 Fla. 861, the provision of the Constitution of Florida which controlled the decision, reads as follows: "There shall be seven circuit judges appointed by

the governor and confirmed by the senate, who shall hold office for eight years. The State shall be divided into seven judicial circuits, the limits of which are defined in this Constitution, and one judge shall be assigned to each circuit. Such judge shall hold two terms of his court in each county within his circuit each year, at such times and places as shall be prescribed by law. The chief justice may, in his discretion, order a temporary exchange of circuits by the respective judges, or any judge to hold one or more terms in any other circuit than that to which he is assigned. The judge shall reside in the circuit to which he is assigned." The system there provided for bears a very close resemblance to the provisions controlling the appointment of our judges for the territorial government, which so lately prevailed here, and which our statute laws and our practice was adapted to. But that system bears no resemblance to that provided by our State Constitution for the establishment of our District Courts, and the election of judges thereof. In Florida the judges were appointed by the governor with the concurrence of the senate. This appointing power acted for the State at large, and the judge was appointed for the State, but assigned, of course, to one circuit, with power given to the chief justice to direct exchange of circuits, or to direct a judge assigned to one circuit to go into another and hold a term or terms of court. The likeness to our territorial system is so striking no comment is needed to show the similarity. This suggestion is made because counsel for plaintiff insists that the practice they contend for has always been the practice, "under our statutes."

It may also be observed that the differences between the establishment of our territorial District Courts and the State District Courts are so striking as to need no comment; and for that reason to cite the practice under our former territorial system, or the Florida authority, lends no aid in determining the question before us. Our State Constitution defines the boundaries of eight judicial districts. (§ 13, art. viii.) The judges of the District Courts are not chosen by the electors of the State at large, or appointed by the governor and senate, acting for the State at large, and assigned to one district; but our District Court judges are elected for each district defined

by the Constitution by the electors of such district.   (§ 12, art. viii.)   The only authority of law now in force by which one district judge may exercise his office in and for a district other than that for which he is elected, is the clause in section 12, article viii., that "any judge of the District Court may hold court for any other district judge, and shall do so when required by law."

The jurisdictional question involved in *Clark* v. *Rugg*, *supra*, arose in this way: Judge Walker was the regular judge assigned to and resident in the second circuit, in which was Leon County.   Judge Vann of the third circuit was assigned to hold the spring term in Leon County.   During said term, while Judge Vann was presiding in Leon County, Judge Walker, the resident judge in said second circuit, made an order at chambers, appointing a receiver in an action pending in Leon County.   The point raised was that Judge Walker was not the circuit judge for that county during said spring term, and hence that the appointment of a receiver, in an action pending in said county, by Judge Walker at chambers, was void for want of jurisdiction.   This was held to be so.   In passing upon the point the court say: "The decision of a case in North Carolina, in respect to the *status* and jurisdiction of the judge, where one is assigned to hold a term in the place of another, seems to meet the first question in this case.   It is there decided by the court that when the governor requires a judge to hold a term of court, regular or special, for some county, outside of his own district, the authority of the judge is special; the jurisdiction of the proper judge is superseded by the substituted judge in that county, during the specified term, in respect to all cases pending in the specified county. (*Bear* v. *Cohen*, 65 N. C. 511.)   This concise statement of the law is so appropriate to the circumstances and the constitutional provision of our own State (Florida) we adopt it as expressing the view of this court.   Judge Vann, having been designated agreeably to the terms of the Constitution to hold the specified term in Leon County, became *pro hac vice*, the judge of the circuit for Leon County during the continuance of the term, as to all cases pending in that county in the Circuit Court, and the authority of the resident judge as to such causes was in the mean time superseded."

In the case of *Bear* v. *Cohen, supra,* it appears that the governor, under authority of a provision of the Constitution of North Carolina, had directed Judge Watts of the Sixth Judicial District to hold the spring terms of court in Wilson and Craven counties, which were in the third district. While so holding court, he made an order in a case pending in Wayne County in the third district, but in a county where he had not been directed to act. It was held that Judge Watts had no jurisdiction to make said order affecting a case pending in Wayne County, and that the order was therefore void; and it was further held that Judge Watts superseded the resident judge, in the counties where he was directed to hold court, while he presided there.

We have quoted from said cases to show how far the same are distinguished from the case at bar by reason of the different constitutional provisions controlling the decisions, and also to show that following those cases would lead directly to the conclusion that Judge Hunt was superseded and his judicial powers suspended, so far as his own district was concerned, while Judge Galbraith was temporarily holding court in Lewis and Clarke County, which is the First Judicial District. It would also follow that Judge Hunt's judicial acts, while Judge Galbraith was there holding court, were of course null and void. This, we think, would be a violent construction of our Constitution not contemplated or intended by the framers thereof. The record shows that Judge Hunt also presided in his court to dispose of general matters pending on the twenty-third day of June, and Judge Galbraith, on the same day, proceeded with the trial of the cause which had been on trial before him on the Saturday preceding.

We are cited to the case of *Morriss* v. *Virginia Ins. Co.* 85 Va. 588. In that case the judge whose jurisdiction was questioned was the judge of the Hustings Court of the city of Richmond, acting as the judge of the Chancery Court of Richmond. He acted as such, however, under the following statute: "During the absence of the judge of said Chancery Court, or the inability of said judge from any cause to hold a term of his court, or to sit in any particular case, or discharge any duty required by law, the said term may be held, or said cause may

be tried, or said duty may be performed by any circuit judge, or by the judge of the Hustings Court of the city of Richmond." It is difficult to see where the room is left, in which to thrust an objection to the jurisdiction of the judge of the Hustings Court to lawfully perform any duty or function of the judge of said Chancery Court, under said statutes, whenever the event happened which made it lawful for the judge of the Hustings Court to act as judge of the Chancery Court. But an objection was made, and the Supreme Court of Appeals, in passing upon such objection, said : " The answer is that when the judge of the Hustings Court was by authority of law sitting as the judge of the Chancery Court, and holding a term of that court, or trying a case therein, he was the judge of that court. He became such by authority of the law by which he lawfully ascended the bench, and any law which referred to the judge of that court, and granted any powers, granted such powers to him. Any other construction of the law would be unreasonable." The court here referred to *the law which has just been quoted,* which provided that when the regular judge of the Chancery Court was absent, or unable from any cause to hold a term, or to sit in any particular case, or discharge any duty required by law, the said term may be held, or said cause tried, or said duty performed by the substituted judge. The objection that the substituted judge, acting under such law, did not have power to exercise all the judicial functions, and perform all the duties of judge of the Chancery Court of Richmond, might justly be characterized as unreasonable. If we had a statute or constitutional provision of such amplitude before us there could be no difficulty in settling the question of jurisdiction involved in the case at bar. The case has no bearing in support of plaintiff's position. The only inference we can draw from it, bearing upon the case at bar, is that if such a provision of law was necessary to authorize the substituted judge to perform *all the duties* of the regular judge in vacation, as well as in holding court in that case, then is not such a provision of law necessary in this case to sustain the jurisdiction of a judge of the District Court in performing all the duties of another district judge, both in holding court and in vacation?

Plaintiff's counsel cite the case, *Ex parte Angus,* 28 Tex. App.

293, a case arising in Texas, where one district judge heard a writ of habeas corpus at chambers for another district judge. The jurisdiction of the judge who heard the writ being questioned the court of appeals said: "It may be contended that Burke being absent, Tucker, to obtain jurisdiction, must issue the writ himself, and make it returnable before him (Tucker). We answer this by this proposition: Burke being absent, if Tucker could issue and hear the writ, he evidently could hear a writ which had been legally issued by Burke. In support of this proposition we refer to article 1124 of the Revised Statutes. 'Any judge of the District Court may hold court for or with any other district judge, and the judges of the several District Courts may exchange districts whenever they may deem it expedient to do so.'" If these judges could lawfully exchange districts, then in that way the judge of one district could become the judge of another district throughout the whole extent thereof, for all the courts thereof, and for all judicial and ministerial purposes devolving upon the judicial office. This of course would include any duties to be performed at chambers. In addition to that, any district judge was authorized to hold court for, or with, another district judge. The law, controlling the decision in this case, renders it inapplicable to the case at bar.

The case of *Empire L. & C. Co.* v. *Engley*, 14 Colo. 289, and the case of *Wyers* v. *State*, 21 Tex. App. 448, shed no light on the question involved in the case before us. In the former case the sole question raised was as to which judge should settle and authenticate the bill of exceptions. It was held that the same should be done by the judge who presided at the trial and made the rulings excepted to. In the latter case it appears that the only question was *as to whether it appeared by the record*, that the judge who presided was authorized to preside at the trial. The court answered that question by observing that the record showed that the judge who tried the cause was presiding in exchange with the regular judge of the district. This was held a sufficient showing.

A case more nearly in point than any other brought to our attention is the case of *People* v. *O'Neil*, 47 Cal. 109, cited by respondent's counsel. In that case the court say: "The order

recites that the writ was returnable before the undersigned district judge of the Fourteenth Judicial District, presiding in the Sixth Judicial District Court. But it appears from the order of Justice Sprague, ordering the writ to be returned before Judge Reardon, that it directs the return to be made before the Hon. T. B. Reardon at the District Court-room, in the city of Sacramento, and omits any reference to the fact that he was then presiding in the Sixth Judicial District Court. But it further appears that at the time when the habeas corpus case was being heard before Judge Reardon, the District Court for the Sixth Judicial District for Sacramento County was in session presided over by Judge Ramage, the judge of that court." Under that state of facts the court observed: "It is legally impossible that Judge Reardon, when he made the order, was presiding judge of the Sixth Judicial Court, which was at that time in actual session, presided over by its own judge, and the order was improperly placed among the files of the court." The contempt proceedings for the violation of the order were declared null and void for want of jurisdiction. It is proper to observe that a question of practice decided in that case is decided otherwise in a later California case, *Tyler* v. *Connolly*, 65 Cal. 28; but the soundness of the reasoning and the conclusion reached upon the point under consideration has never been questioned by any court to our knowledge, and had the case been brought up by *certiorari*, the same result would have been reached, and no question of practice involved.

The case of *Gale* v. *Michie*, 47 Mo. 326, involving a question of jurisdiction, which was determined by construing a provision of the Missouri Constitution, we think has a strong bearing, by analogy, upon the case at bar. The point in controversy, as well as the conclusion reached by the Supreme Court of that State, is stated by Judge Philemon Bliss as follows: "The question then arises whether the judge of the Gasconade Circuit Court, being himself interested in the cause, had a right to call upon a judge of a neighboring circuit, who was present, to sit and determine said cause. If he had such right he must have obtained it from the Constitution of the State, for it will not be pretended that considerations of convenience or of fairness merely will control the jurisdiction of

a court, or point out the judge who is entitled to hold it. Reliance, doubtless, was had upon section 17 of article vi. of the Constitution, which reads as follows: 'If there be a vacancy in the office of judge of any circuit, or if he be sick, absent, or from any cause unable to hold any term of court of any county of his circuit, such term of court may be held by a judge of any other circuit; and at the request of the judge of any circuit, any term of court in his circuit may be held by the judge of any other circuit.' In this case both judges evidently construed the authority given a judge of another circuit to hold one of the terms of the Gasconade Circuit Court, at the request of its judge, as also giving authority to sit in a particular cause at his request, the term being held by himself. But no such authority is contained in the section, either directly or by implication." If, then, the power to call in another circuit judge to hold a term of court gives no authority expressly or by implication, to call in such judge to hold part of a term, or try one cause, *a fortiori*, it must be said that the authority to call in another district judge "to hold court" does not confer authority on the substituted judge, to exercise powers and discharge duties not involved in holding court; that is, to exercise the powers of the resident judge of the district at chambers in vacation. Under our system, any district judge has power to go into another judicial district and hold court for another district judge. But we are confident that the framers of our State Constitution did not contemplate that the judges of the District Court should exercise concurrent jurisdiction in one district, until the authority so to do was given by legislation: *First*, because the Constitution provides (§ 12, art. viii.), that one judge shall be chosen in each district by the electors thereof; *secondly*, because the Constitution provides that the legislative assembly may increase the number of judges in any district. (§ 14, art. viii.) If this view is correct, there could have been only one district judge of the first district when the order in question was made, and if Judge Galbraith was the judge of said district to all intents and purposes, not only to hold court, but to exercise the judicial functions out of court in vacations, until the completion of the trial or trials which were progressing before him, it follows that Judge Hunt was

superseded during that time.    The record shows that when
Judge Galbraith issued said order of injunction at chambers,
Judge Hunt was in his district in the City of Helena where the
District Court for the district was held; and further, that while
Judge Galbraith was there after the trial of the cause before
him had commenced, Judge Hunt presided in his own court to
dispose of general matters pending, when Judge Galbraith was
not actually occupying the bench, and when Judge Hunt left
the bench Judge Galbraith proceeded with said trial.

It is contended by counsel for plaintiff that the statute author-
ized Judge Galbraith to issue said order at chambers, and the
following provision is cited: "An injunction is a writ or order
requiring a person to refrain from a particular act.    The order
or writ may be granted by the court in which the action is
brought or by a judge thereof, and when made by a judge may
be enforced as the order of the court."    (§ 172, Code Civ.
Proc.)    To support the position of plaintiff's counsel it is con-
tended that because Judge Galbraith held court in the first
district on Saturday and court having adjourned until Monday,
and Judge Galbraith not having finished the trial of the cause
on trial before him, and presided again on the following Mon-
day, thereby he was judge of the said court during the *interim*
from the adjournment on Saturday until court convened on
Monday, or in the language of the statute, he was "a judge
thereof;" that is, judge of the court wherein the action was
pending in which injunction was sought, and therefore the stat-
ute referred to him.    We will dwell upon this proposition a
moment, although the record shows as before observed that
Judge Hunt was in his district at the place where the First Judi-
cial District Court is held, at the time the order of injunction
was issued, and that Judge Hunt convened his court on the
following Monday morning, passed upon motions and demurrers,
and thereafter Judge Galbraith held court and proceeded with
the trial which had been progressing before him on the preced-
ing Saturday.    If the trial proceeding before Judge Galbraith
in the first district had been finished on Saturday, and he had
no further engagement to hold court in the first district at that
time, it would hardly be contended that when he descended
from the bench, having finished his engagement there, he would

still have held judicial authority in the first district, although he may have remained in the city of Helena some time. But because he had not finished the trial of said cause, that is, because he proposed to hold court for the judge of the first district at a future time, he still held the judicial power in and for the first district, during the *interim*, and could issue orders in vacation, in other cases pending there, until that intention was fulfilled. But how would it be if that intention to hold court at a future time was never fulfilled by that judge? Suppose the parties during the *interim* should settle the controversy, and dismiss the action independently of such judge, by causing the clerk of the court to enter an order of dismissal in the register, as could be done under section 242 of the Code of Civil Procedure; or suppose that from sickness of the judge or his family, or of some of the litigants, counsel, jurors, or from other cause the further progress of the trial had been postponed for, say, ten days; or suppose again, that at the close of such trial, a motion was made to arrest judgment, or a motion of some other character, which the judge reserved under advisement for a fortnight; and under some such conditions Judge Galbraith left off holding court, and Judge Hunt proceeded with the regular business of his court, which is under the Constitution "always open for the transaction of business except on legal holidays and non-judicial days" (§ 17, art. viii.); would Judge Galbraith still have been judge of the First Judicial District Court during the *interim?* He would according to the theory of plaintiff's counsel, and would be authorized to issue orders at chambers, in cases pending in the First Judicial District Court. But suppose again, that while the judge was presuming to hold such ephemeral jurisdiction by virtue of a precarious link of unfinished business which connected his judicial power with such other district, the parties should without his knowledge settle the controversy and dismiss the action, such judge would have no unfinished matter requiring him to return to that bench. Thereby would be broken the uncertain tenure, whereby such judge was presuming to hold a jurisdiction, and was acting, at chambers, upon other matters pending in such district; and such judge would be thereby divested of all judicial power in such foreign district.

We do not think that after careful consideration of the subject it will be seriously argued, that under such convertible, capricious, and uncertain conditions and contingencies, the judge of one district can retain his jurisdiction as judge of a court, in another district, in vacation when he is not holding such court. We are irresistibly drawn to the conclusion that such a theory is untenable, and that the proper construction of the constitutional provision in question, is that when a judge of one district goes into another to hold court, he is judge of the latter court while he presides; and further, that it requires legislation to enable the district judges to go into districts other than their own, and become the judge of such other district to all intents and purposes for temporary occasions.

Many suggestions are made in the petition for rehearing which rest wholly upon considerations of convenience. We do not regard these suggestions as entirely out of place in illustrating the effect, where two reasonable constructions are possible. This court was not unmindful of those considerations when this case was originally determined. We fail to see, however, that the conditions or circumstances surrounding the litigants in question were inconvenient at the time said order was made. Judge Hunt of the first district was in his district at the time empowered by law to issue the order in vacation at chambers, while another district judge was presiding over the court of that district the same day on which the order was issued, and such order could have been issued as a court order. The suggestion addressed to this court, that "there might be a suspension of the writ of injunction indefinitely," or that the writ would be unavailable as a safeguard to protect the rights of property, by reasons of the jurisdiction of the district judges, as we regard the constitutional provisions on that subject, is equally specious. When we consider that the Constitution provides for eight judicial districts in the State, and a district judge resident in each district, with provision that in case of vacancy the governor may fill the same by appointment, with the provision that in districts comprising only one county, the District Court shall always be open for the transaction of business, except on holidays and non-judicial days; and in districts composed of more than one county the judges may fix the terms of court, which

shall not be less than four per annum, with the provision that any judge of the District Court may hold court for any other district judge; and the statute providing that the resident district judges are empowered to issue the order of injunction at chambers, as well as by way of a court order; and that said order may be issued by a non-resident district judge as a court order when holding court in another district; under such conditions as these the criticism is without force or justification.

If the framers of our Constitution had intended to provide that the district judges might exchange districts *ad libitum*, and thereby the district judge of one district become invested with all the judicial power in and for another district, of course they would have so provided. It is fair to presume that they had before them the Constitutions of other States framed on that theory of establishment of District Courts, and the jurisdiction of such courts and the judges thereof, as well as knowledge of the construction of such provisions by the courts. But they adopted no such language. It will be observed that authority to "exchange districts" involves infinitely more than authority to "hold court for any other district judge." Under authority "to exchange districts," Judge Hunt, whose district comprises only one county, might exchange districts with Judge Galbraith, and thereby become immediately invested with all the judicial power of district judge of a district comprising three counties, not only to hold all courts of such counties, but he could exercise all judicial powers devolving upon the office of district judge of the latter district in holding court and in vacation; whereas, if he was called upon to "hold court" for Judge Galbraith, it might be for a day, or for the trial of one cause in Jefferson County only, and Judge Galbraith might proceed to hold court in another county of his own district, and exercise his judicial power in vacation throughout his own district. Is it to be presumed that the framers of our Constitution adopted language without duly weighing its import and scope of meaning as distinguished from other forms, especially where other forms have been construed?

Mr. Cooley, upon this subject, says: "In interpreting a clause we must presume that *words have been employed in their natural and ordinary meaning.* As Marshall, C. J., says: 'The framers

of the Constitution and the people who adopted it must be understood to have employed words in their natural sense, and to have intended what they have said.' This is but saying that no forced or unnatural construction is to be put upon their language; and it seems so obvious a truism, that one expects to see it universally accepted without question; but the attempt is made so often by interested subtlety and ingenious refinement to induce the court to force from these instruments a meaning which their framers never held, that it frequently becomes necessary to redeclare this fundamental maxim." (Cooley's Constitutional Limitations [5th ed.], 71.) Again, the same author observes: "Every such instrument is adopted as a whole, and a clause which, standing by itself, might seem of doubtful import may yet be made plain by comparison with other clauses or portions of the same law." (Cooley's Constitutional Limitations [5th ed.], 70.)

Although the framers of our Constitution went far in providing for the convenient administration of justice in our State, a study of that instrument plainly shows that they left to the legislative assembly the further enactment of provisions to render the administration of justice still more convenient and speedy, by providing in detail for supplying temporary vacancies, or absence or disabilities, occurring in respect to the office of district judge (§§ 12, 13, 14, 17); and we cannot supply all that may be needed by construction. Indeed the clause in question is so direct, plain and concise, there is no room for interpretation between two or more possible constructions. Nor is the position plaintiff's counsel contend for supported by any implication to be found in said clause by any authorized rule of intepretation. We think the construction or implication contended for by plaintiff's counsel would involve greater inconvenience, uncertainty, and derangement in the working of our judicial system, than is involved in following the plain meaning expressed in the clause in question. We leave the clause to be given its fullest scope and import, in the investiture of any district judge with power to hold court in another district; and with every implication necessary to clothe such judge with every power and attribute which can be exercised in fulfilling the office of presiding over or holding court in another district.

The exercise of no such power is questioned in this case.   After much careful study of the Constitution, and authorities in reference to this subject, we see no reason why an enactment similar to the Virginia law referred to, *supra,* may not be put in force in this State with some further provisions to authorize a State officer by requisition to call upon a district judge to hold court, and perform all other duties of district judge of another district, when the judge of such district is unable from any cause to discharge the same.

In order to give weight to the argument of counsel for plaintiff it has been questioned, that if the jurisdiction contended for has not been given by the Constitution, the legislature has no power to pass such an act as suggested.   If the legislature cannot so provide it is because the Constitution prohibits it.   The legislature is the supreme law-making power for the State, on all rightful subjects of legislation, except as restricted by the Constitution.   (Cooley Constitutional Limitations [5th ed.], 105–109.)   There is no such prohibition in that instrument. There is express authority given to the legislature to change the boundaries of judicial districts.   Thereunder a county may be taken from the jurisdiction of one judge and placed permanently under the jurisdiction of another judge for all judicial purposes.   Cannot that which may be done permanently be also done temporarily?   Moreover, it may be said upon authority that the legislature is competent to add statutory jurisdiction to constitutional jurisdiction, provided that the statutory jurisdiction is in harmony with, and does not infringe or curtail the constitutional jurisdiction.   (*Harris* v. *Vanderveer's Executor,* 21 N. J. Eq. 424; *Supervisors* v. *Arrighi,* 54 Miss. 668; *Martin* v. *Harvey,* 54 Miss. 685; *Bank of Mississippi* v. *Duncan,* 52 Miss. 740; *People* v. *Hurst,* 41 Mich. 328; Wells on Jurisdiction, 54.)

Some suggestions herein may be subject to the criticism of being mere *dicta;* but this subject has been argued with such zeal and ability by the learned counsel, and engages such interest of the judiciary and bar of the State, as well as able gentlemen who aided in framing the Constitution so lately adopted, we have felt justified in giving the subject a broad and extended discussion.

From all the points of view from which the subject has been examined, following authority, sound rules of interpretation, and reasoning, we must adhere to the conclusions originally reached in this case

BLAKE, C. J., concurs.

### ON REHEARING.

DE WITT, J. (*dissenting*). — The facts of the case are fully stated in the opinion of the court upon the original hearing, July term, 1890. Upon the rehearing, the respondent has more fully presented the question of jurisdiction, upon which point the case was originally decided, and cited authorities, which have led me to reform my views, by virtue of which I concurred in that decision. In the learned opinion of the majority of the court just read, the original conclusion is affirmed. I regret that I cannot agree with my associates in that result, and will state the grounds of my dissent.

Against the views of the majority of the court a serious argument, *ab inconveniente*, may be made. Some suggestions in that direction are as follows: Under article viii., section 37 of the Constitution, a judge may, if he be not otherwise prohibited, legally absent himself from the State for a limited period. If a judge avail himself of this permission, or if he be temporarily disqualified by illness or otherwise, the important writ of injunction cannot, at all times, be set in motion. If a judge be holding court for another, under the provision of section 12, article viii. of the Constitution, a premium is held out to the evil-minded to commit outrages, during the periods between the sessions of the court, which the judge is powerless to prevent. In the temporary disqualification or absence of the judge, or a vacancy in his office, a vast amount of formal work done at chambers would be suspended. The argument *ab inconveniente* cannot prevail, nor is it of weight in the face of positive law; but in doubtful cases, and where two constructions are possible, it availeth much. (*People* v. *McCauley*, 1 Cal. 379; *Bear* v. *Cohen*, 65 N. C. 513.)

If the Constitution and laws can be so construed as to save the ever-present invocation of the great remedy of injunction,

I am of opinion that it is the duty of the court to follow such construction. I feel that I must be amply satisfied that the framers of the Constitution so intended, before I can consent that at any time the people shall be deprived of the beneficent operation of this writ. With these views, I seek a construction of the Constitution that will protect the rights of property, and not leave them to wanton destruction.

The Constitution, section xx. Schedule, section 1, is as follows: "All laws enacted by the legislative assembly of the Territory of Montana, and in force at the time the State shall be admitted to the Union, and not inconsistent with this Constitution, or the Constitution or laws of the United States of America, shall be and remain in full force as the laws of the State, until altered or repealed, or until they expire by their own limitation."

At the time the State was admitted into the Union, there was in force the following law of the Territory: "An injunction is a writ or order requiring a person to refrain from a particular act. The order or writ may be granted by the court in which the action is brought, or by a judge thereof, and when made by a judge, may be enforced as to the order of the court." (§ 172, Code Civ. Proc.)

This provision of the law seems to me to be devoid of ambiguity. When it says that the writ or order may be granted by the court in which the action is brought, or by a judge thereof, it may not mean that it may be granted, at chambers, by any judge of any District Court in the State, whether he be the regular judge of the particular court or not. As to this I express no opinion. But it does certainly mean that it may be granted by a judge of the court in which the action is brought.

Two inquiries present themselves: (1) Was Judge Galbraith, when he issued the order, a judge of the First Judicial District Court? If he were it must follow, under section 172 of the Code of Civil Procedure, cited above, that he had jurisdiction to issue the order: *Provided*, (2) that section 172 is not inconsistent with the provisions of the Constitution in reference to the jurisdiction and organization of the District Courts, and the power of the judges thereof. My associates are of the opinion that Judge Galbraith was not a judge of the First Judicial District Court, in the full sense of that term, but that

his authority was limited to simply presiding over an open session of that court. I believe that a broader view must obtain.

In discussing the cases where my learned brother, writing the opinion of the majority, has quoted the text, I will not repeat that which is cited by him, but will comment upon his conclusions.

Section 12, article viii. of the Constitution provides, among other things, as follows: "Any judge of the District Court may hold court for any other district judge, and shall do so when required by law." The action in which the injunction order was granted was commenced in the First District Court, June 21, 1890. Judge Galbraith of the fifth district, pursuant to the provision of the Constitution above cited, held court in the first district for Judge Hunt, during the court hours of that day, which was Saturday. All that appears in reference to Judge Hunt on that day is that he was present in the city of Helena, where said court was held. He did not hold any court that day, nor exerise any judicial functions. Judge Galbraith continued to hold court on the Monday following, June 23d. Between the adjournment of Saturday and the convening of Monday, he was, of course, not on the bench, or doing the work which is done in court. During this period, and on Saturday afternoon, at chambers, he issued the injunction order complained of. During the whole of this period, this Saturday, Sunday, and Monday, he was doing all that is understood as "holding court." He left the bench for the night, and for a non-judicial day. But, on these days he was "holding court" in the full sense of the term. He could have done nothing further, which would have rendered a fulfillment of the definition of the term "holding court" any more complete. What was the character, official or otherwise, of the individual Thomas J. Galbraith, when he was thus "holding court," as described? Was he a referee; was he a trier of a single cause by stipulation or otherwise; were his functions limited by any order assigning him to this court; or was he a judge of the court? And let it be remembered that the statute, section 172, says that the writ or order may be granted by "*a* judge," "*a* judge of the court." The words "a judge" occur twice in the

statute, and give the air of deliberation to the expression. It need not be "*the* judge" of the court. The article "a" seems to me to be suggestive. If the law read "*the* judge," there would be more reason in contending that it meant the regularly elected or appointed judge of the particular court. But the article "a," in itself, carries the idea of more than one judge. It is equivalent to "any," and seems to exclude the application of the statute to the one judge of the court. I cannot but conclude that Judge Galbraith, " holding court," as he was, when he issued the order, was a judge of the court, whether I regard the common understanding of language, or the history of legal proceedings.

I am not without support in my views in the decisions of the highest courts of sister States, if I interpret correctly the letter and spirit of those decisions. The difference between the members of this court, in their views of those cases, has largely led to the divergence in this decision. I will treat those cases in the same order pursued by my associate.

First, as to the Florida case, *Clark* v. *Rugg*, 20 Fla. 861. My associates seem to hold that the only force of this case as an authority is its application to our late territorial judicial system; and they note that counsel have urged upon our consideration what has always been the practice in the Territory. I in no way rely upon the territorial practice, but look only to the State Constitution, and the laws adopted thereby, and apply the reasoning of the Florida case to such Constitution and laws. The applicability of the Florida case to the case before this court is disposed of by the majority opinion in this argument: That in Florida the circuit judges are appointed by the governor for the State at large, but assigned to a circuit, whereas, with us, the District Court judges are not chosen by the electors of the State at large, or appointed by the governor for the State, but are elected for a district, by the electors of that district. In the view of the court, there would seem to be something sacred in this election of a judge by the people of his district, something by virtue of which the people of the district, by such vote for their judge, excluded a judge of a foreign district from coming among them. The judge, whether in a foreign district or

his own, has no powers but those granted by the Constitution, either expressly or by necessary implication. But the sovereign people who elect the judge of the district are the same sovereign people who made the Constitution. The people of a district who declare their wishes in their election of a judge have also, in a more solemn manner, declared themselves in the Constitution. Therefore the people of the first district, who elected Judge Hunt, also, at the same election, as it happens in this instance, expressed the permission that Judge Galbraith should "hold court" (Const. art. viii. § 12) for Judge Hunt; and we have only to arrive at what the people intended in their Constitution by the words "hold court." In this view, the Florida case applies as forcibly to our situation as to the Florida system. And let it go even to the extent of the temporary suspension of Judge Hunt's judicial functions. It establishes Judge Galbraith's power to issue the order. The condition of affairs is better if Judge Galbraith be the judge, and the whole judge, and Judge Hunt be in temporary suspension, than if jurisdiction be temporarily divided between the two officers, and litigants be uncertain in which department of the court their business is properly classified. In the Florida case the judge was assigned to "hold a term" for another. There was not an order for him to "exchange circuits" under the Constitution of that State; which, perhaps, might imply more powers than "holding a term." The expression of our Constitution, "hold court," seems to have as great a signification as "hold a term." The North Carolina case of *Bear* v. *Cohen*, 65 N. C. 513, is to the same effect, and need not be reviewed. I am of opinion that each of these cases, holding that the substituted judge had jurisdiction, sustains my view that Judge Galbraith had power to issue the order in question.

In order to make clear my views of the Virginia case, it will be necessary to cite a little more fully from the opinion of the court, as follows: "The first error assigned is that the vacation decree rendered by A. B. Guigon, judge of the Hustings Court of Richmond, acting as a judge of the Chancery Court of Richmond, was a nullity, and all acts under it void, because there

was no authority found in the law for a judge to render a decree in vacation, which power is not given by the authority to render such decree in term. . . . . Section 53, ch. 167, Code of Virginia, 1873, provides: ' Chancery causes may hereafter, by consent of parties given in open court and entered of record, be submitted to the judge of the court in which such cause is pending for decision or decree to be made therein in vacation, and all decrees so made hereafter and entered by the clerk in vacation shall be deemed and taken to be as valid as though they had been made and entered in open court.' This act was passed in January, 1873. But it is contended that this act only gave such authority to the judge of the court in which the cause is pending, and that the judge of another court, sitting in such court, could not thus acquire the needed authority. It is provided by the Act of Assembly of July 11, 1870: ' During the absence of the judge of said Chancery Court, or the inability of the said judge, from any cause, to hold a term of his court, or to sit in any particular case, or discharge any duty required by law, the said term may be held, or said cause be tried, or said duty may be performed by any circuit judge, or the judge of the Hustings Court of the city of Richmond.' But the argument is still further pressed, that if the judge of the Hustings Court was thus authorized to sit as judge, under the Act of July 11, 1870, that the Act of January 14, 1873, which authorized the judge of that court to render a decree in vacation when the parties consented, did not apply to the substituted judge, because the terms of the act did not include him; that the authority is given to the judge of that court, and none other. The answer is, that when the judge of the Hustings Court was by lawful authority sitting as judge of the Chancery Court, and holding a term of that court, or trying a case therein, he was the judge of that court. He became such by authority of the law by which he lawfully ascended that bench; and any law which referred to the judge of that court, and granted any powers, granted such powers to him. Any other construction of the law would be unreasonable." (*Morriss* v. *Virginia Ins. Co.* 85 Va. 588.)

It will be observed that by the Virginia statute, if the chancery judge was disabled, (1) to hold a term, (2) to sit in a par-

ticular case, (3) to discharge any duty, then the judge of the
Hustings Court might (1) hold that term, (2) sit in the particu-
lar case, (3) discharge any other duty.   The rendering of the
decree in question in the case by the Hustings judge would come
under the third classification of powers.   If it appeared that
the chancery judge was, from any cause unable to render this
decree, the judge of the Hustings Court might do so.   It does
not appear in the case that the chancery judge was unable to
render the decree, or that the Hustings judge rendered it for
that reason; but it does appear that the judge of the Hustings
Court had been holding a term.   The decision of the Supreme
Court does not proceed upon the ground that the Hustings judge
could render the decree by reason of the inability of the chan-
cery judge, as permitted in classification 3, *supra;* but the
decision is placed upon the ground that the Hustings judge had
power to render the decree because he had held the term and
was judge of the court, and that laws referring to the judge of
the court referred to him.   Although the Virginia statute is
infinitely broader than our constitutional provision, the decision
of that case does not rest upon that additional breadth, but
rather upon reasons above remarked, and reasons entirely
applicable to the case now before this court.   I therefore refer
to the case with approval, as sustaining my position in the case
at bar; and, returning to that case, it is not questioned that
Judge Galbraith was lawfully upon the bench of the First Dis-
trict Court on those days in June.   Consequently, under the
Virginia case, any law or constitutional provision, which granted
powers to the judge of that court, granted those powers to him.

Section 1124 of the Revised Statutes of Texas, provides:
"Any judge of the District Courts may hold court for or with
any other district judge, and the judges of the several District
Courts may exchange districts whenever they may deem it
expedient to do so."   The Supreme Court, *In re Angus,* 28
Tex. App. 293, in construing that provision, said: "If a dis-
trict judge may hold court for another judge, has he not the
authority to hear a habeas corpus case for him at his request,
the other judge being absent from the district?   We will not
discuss this proposition, deeming it too plain for discussion."
It may be observed that in this case the writ was made return-

able at chambers, and not before the court; and that the Supreme Court base the decision, not upon the ground of an "exchange of districts, which, perhaps, would, in itself, mean an exchange of all judicial functions; but upon the ground that the substituted judge was 'holding court,' and so 'holding court,' had the authority in question, at chambers."

Section 12, article vi. of the Constitution of Colorado, substantially the same as ours, is as follows: "The judges of the District Courts may hold courts for each other, and shall do so when required by law." The Supreme Court of that State (*Empire L. & C. Co.* v. *Engley*, 14 Colo. 289), held that a judge so holding court for another, was the proper judge to settle a bill of exceptions in a case so tried by him. It does not appear whether such bill of exceptions was settled in chambers or in court; but if the former, it would not seem to be correct, if the view of the majority of the court in the matter before us obtains.

The case of *People* v. *O'Neil*, 47 Cal. 109, is in no way adverse to the view which I hold. In that case Judge Reardon, of the fourteenth district, was temporarily in the city of Sacramento, in the sixth district. While so there he heard and determined a matter in chambers, and made an order thereon. The opinion says: "The order recited that the writ was 'returnable before the undersigned district judge of the Fourteenth Judicial District, presiding in said Sixth Judicial District Court.' But it appears from the order of Justice Sprague, ordering the writ to be returned before Judge Reardon, that it directs the return to be made 'before Hon. T. B. Reardon at the District Court-room in the city of Sacramento,' and omits any reference to the fact that he was then presiding in the Sixth Judicial District Court." The fact was, as appears by the decision, that Judge Reardon was not holding court, or presiding in the foreign district. In that vitally material fact the case is wholly distinguished from that now under consideration. But Judge Galbraith was holding court in the first district, and upon that fact I find sufficient foundation upon which to lay the structure of my conclusions herein.

The application made, in the opinion of the majority of the court herein of *Gale* v. *Michie*, 47 Mo. 326, meets neither my

assent nor my understanding. The opinion of the Missouri court is sufficiently cited for my purposes, and I will not re-quote it. The authority conferred by the Missouri Constitution is wholly different from that by the Virginia statute considered above. The latter gives the substituted judge the power to hold a term, and separately and independently, and when not holding a term the power to try a particular cause, and perform particular acts. The Missouri constitutional provision gives the judge power only to hold the term, and in holding the term, to hold the whole term; that is to say, he may try the particular case, and do the specific act when he is holding the term, but cannot try the particular case, or do the specific act when he is not holding the term, or as segregated from the holding of the term. The Supreme Court, in the case being reviewed, as a matter of course, held that the judge not holding the term, he could not perform the partial and segregated act of a term, to wit, try one particular case. He might do the whole under the authority of the Constitution, and doing the whole, he may do all the parts. The whole includes the parts. But not doing the whole, or called upon or assigned so to do, and exercising no power over the whole, he had no power over the part. If he were exercising the power over the whole, that power would go to the part, that is the particular case. These are very elementary principles of logic.

Applying the Missouri decision to our constitutional situation, the opinion of the majority of the court makes this argument. "*A fortiori*, it must be said that the authority to call in another district judge 'to hold court' does not confer authority on the substituted judge to exercise powers and discharge duties not involved in holding court, that is, to exercise the powers of the resident judge of the district at chambers in vacation." The statement of this argument is in the nature of a begging of the question. The point at issue and to be proved is that the person "holding court" was the judge of the court, and as judge of the court had power to issue the injunction order under discussion.

The argument of my learned brother assumes the non-exist-ence of the ultimate fact to be arrived at, and from that assump-tion argues the conclusion which he has already assumed. But

granted that the *authority* to call in another judge to "hold court" does not itself confer upon that judge authority to do acts, of which the act in controversy is one; but *the exercise of that authority*, the calling in of the foreign judge, the *fait accompli* of his "holding court," confer upon him the power to be and make him a judge of the court; and as judge of the court, he has the powers of a judge, one of which was to issue the order, the subject of the controversy.

The cases of *Klaise* v. *State*, 27 Wis. 463; *Owens* v. *State*, 27 Wis. 456; *American L. & C. Co.* v. *East & West Ry. Co.* 40 Fed. Rep. 182, have been cited against the view I endeavor to express; but their inapplicability is too apparent to require discussion.

As a result of this review of the cases, and the reason of the matter as it addresses itself to my mind, I am of opinion that section 172 of the Code of Civil Procedure, cited above, must be construed to the effect that Judge Galbraith was a judge of the First Judicial District Court on June 21, 1890, and as such judge had jurisdiction to issue the order under discussion, unless said section 172 is inconsistent with the Constitution of the State. Into that inquiry I will now proceed. Enough has been already said to open a short road to the conclusion which I hold.

The portions of the Constitution applicable to this discussion are that part of section 11, article viii., as follows: "Said courts [the District Courts], and the judges thereof, shall have power also to issue, hear, and determine writs of mandamus, *quo warranto, certiorari,* prohibition, injunction, and other original and remedial writs, and also all writs of habeas corpus on petition by or on behalf of any person held in actual custody in their respective districts." I take occasion to say that the punctuation in the above citation is correct as it appears on the original Constitution on file in the office of the secretary of State, which is not the case in the published copies with which the printer, as is usual, has taken liberties to suit his own taste. I cite also section 12, article viii. "The State shall be divided into judicial districts, in each of which there shall be elected by the electors thereof, one judge of the District Court, whose term of office shall be four years, . . . . and until their suc-

cessors are elected and qualified. Any judge of the District Court may hold court for any other district judge, and shall do so when required by law."

It is not necessary here to determine whether the judge of the fifth district, at chambers, when he is not holding court in the first district, has power to issue an order of injunction in a case pending in the First District Court. As we have above seen, the judge of the fifth district was, in the case before us, holding court in the first district. Sections 11 and 12, *supra,* give the judge of a District Court, at chambers, power, at least, to issue an order of injunction in a case brought in the court of which he is judge. Following this proposition, I find that the last paragraph of section 12 gives the judge of the Fifth District Court power to hold court in the first district, which he was doing when he granted the order.

Taking the next step in the argument, it is seen from the construction of similar constitutional and statutory provisions in other States, in cases above quoted from, when a judge of a district "holds a term," or "holds court," in a district other than his own, he is judge of the court of that district. I therefore conclude that on June 21, 1890, Judge Galbraith was a judge of the First Judicial District Court. Then apply to him the provisions of section 172, and he, as a judge of that District Court, had power to issue the order which he did. It is not within my understanding to consent that section 172 of the Code of Civil Procedure is inconsistent with the Constitution in this particular. I believe that the law and the Constitution are in harmony, and may stand together for the preservation of the writ of injunction.

My learned associate suggests that inconveniences and derangements of the judicial system would be greater under the application of the doctrine that I venture to hold than under that promulgated by the majority of the court. I am willing to go to the whole length of the cases reviewed, and hold that Judge Hunt's judicial functions were temporarily suspended in the first district, and even then, I am of opinion that the judicial system would be a more smoothly working machine if the substituted judge were a whole judge than it would were he a fractional part thereof.

Another objection that I have to the position of the majority of the court is, that it suggests a doubt whether the difficulty is remediable without a constitutional amendment. The Constitution says that a foreign judge *may* hold court for another. It further says that he *shall* do so when required by law; that is to say, he must do so when the legislature passes an act so requiring him. At present he simply may hold court, perhaps as a courtesy to a brother judge. If the construction of the majority of this court of the words "holding court" is to obtain, then may the legislature, in addition to requiring a district judge to hold court for another, also extend the signification of the words "holding court," so that they shall include what the majority of this court now say they do not under the Constitution include? This is an interesting inquiry.

It occurs to me that the present disagreement between my associates and myself in this case is the old difference in the doctrines of construction that has employed the thought of constitutional writers from the foundation of the American government, the history of which is luminously written through the reports of the Supreme Court of the United States.

It is a rule of construction of the Constitution of the United States, evolved through the broad views and comprehensive genius of America's greatest American, Chief Justice Marshall, that, if the court will closely scrutinize the grant of a power to ascertain whether it exist, then, when it is determined that the power is granted, the court will liberally and broadly construe the means of carrying that power into effect. The power being found to exist, there must be with that power the habiliments wherewith to clothe it in perfect symmetry, and the weapons with which to arm it in invincibility.

The Constitution of the United States may be read in a half-hour. A perusal of the literature of its construction is a life work. And that construction, triumphing over constant and vigilant enemies, has evolved the national doctrine, that, the power once granted to exist, there spring into being all the necessities of the life, health and strength of the power. Any other doctrine would have left the Constitution of the United States a shivering, unclothed foundling on the highway of time, instead of developing the robust, magnificent manhood, which

now holds its head above the nations of the earth. I do not for a moment lose sight of the fundamental distinction between the Constitution of the United States and that of a State. I speak of the doctrine of the construction of the Constitution of the United States simply as a forceful illustration of my view of the section of our Constitution (§ 12, art. viii.), which is a section conferring power upon the District Court judges.

My learned associates take the most restricted view of the section. It is my opinion that the principles of our government demand a broader construction; that when we find in the District Court judge the power to hold court, we should discover him clothed in the full panoply and attributes of a judge of the court, and that it should not be left to the circumstances of each instance to ascertain, perhaps from doubtful evidence, what were his particular functions at a particular time.

With these views forced upon my mind as they are, seriously impressed as I am that my opinion is in accord with the established doctrines of American government and Republican institutions, I cannot refrain from expressing an earnest dissent from the conclusion of the court.